UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
MICHAEL MURPHY

       Plaintiff,

    - against -

SUFFOLK COUNTY COMMUNITY COLLEGE
and JOHN WILLIAMS

       Defendants.
-----------------------------------------------------------X

**ORDER**

10-CV-0251 (LDW) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.  **PRELIMINARY STATEMENT**

  Plaintiff's original Complaint asserts claims for age discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and deprivation of his constitutional rights as secured by the Fourteenth Amendment in violation of 42 U.S.C. § 1983.  DE 1.  Plaintiff also sets forth a "constructive discharge" theory of liability.  *See id.*  On April 29, 2011, Judge Wexler issued an Order denying Defendants' motion to dismiss Plaintiff's Title VII retaliation claims and granting Defendants' motion to dismiss Plaintiff's Section 1983 claims arising out of alleged age discrimination in violation of the Fourteenth Amendment on the grounds that such claims are precluded by the prior decision of the New York State Division of Human Rights ("DHR").  *See* DE 17.  Initially, Judge Wexler reserved his ruling on Defendants' motion to dismiss Plaintiff's constructive discharge claim on the grounds that Plaintiff failed to exhaust his administrative remedies pending further briefing.  Ultimately, the Judge denied the motion.  *See* DE 29.

The only claim asserted against individual Defendant John Williams was for his alleged unlawful termination in violation of Plaintiff's constitutional rights under § 1983. Cmpl. ¶ 35. Since that cause of action was dismissed, the claims remaining are Plaintiff's age discrimination and retaliation claims against Defendant Suffolk County Community College ("SCCC").[1] Pursuant to leave granted by Judge Wexler, Plaintiff filed a motion to amend his Complaint to add specific reference to the Age Discrimination in Employment Act ("ADEA") in connection with these claims. *See* DE 24-3, Ex. 4. For the reasons set forth more fully below, the motion to amend is GRANTED.

**II.   BACKGROUND**

Plaintiff was employed as a Campus Security Guard (I) with SCCC from 1987 until he retired in May 2008.[2] Plaintiff alleges that in or around 2002, when John Williams became his supervisor, Plaintiff began to experience discrimination due to his age. Plaintiff claims that he was passed over for a promotion to the position of Campus Security Guard (II) in favor of a younger, less qualified candidate and that he was denied personal and leave time routinely granted to younger employees.

In 2005, Plaintiff filed a complaint of discrimination with the New York State Division of Human Rights ("DHR"). After filing that complaint, Plaintiff alleges that the discrimination continued and that he was subjected to further discrimination in retaliation for filing the DHR complaint. Specifically, Plaintiff alleges that he was denied overtime opportunities afforded to

---

[1]   Plaintiff does not name John Williams as a Defendant in the proposed Amended Complaint. *See* DE 24-3.

[2]   All of the facts are taken from the proposed Amended Complaint [DE 24-3] and are assumed true for purposes of this motion

2

younger, similarly situated employees and was also denied uniforms, supplies, safety equipment, and training that younger, similarly situated employees received. Plaintiff filed another complaint with the DHR in 2007 after which he alleges the discrimination continued. According to the Plaintiff, in retaliation for now filing a second DHR complaint, Defendant Williams issued Plaintiff a reprimand in May 2008 for an incident that occurred a year earlier. Specifically, the reprimand was based on Plaintiff's calling in sick during a mandatory overtime shift in May 2007. Plaintiff made the call so that he could attend to a family illness. Concluding that the reprimand was initiated a year late primarily in retaliation for his second DHR complaint, the Plaintiff further alleges that younger, similarly situated employees did not receive reprimands for similar conduct. After receiving the reprimand, Plaintiff claims he retired out of fear that he would lose his job.

### III.     STANDARD OF REVIEW

Rule 15(a) of the Federal Rules of Civil Procedure provides that in cases where a party cannot amend as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave." *See* Fed. R. Civ. P. 15(a); *see also Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002); *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991). A court "should freely give leave when justice so requires" and such leave is in the court's discretion. *See* Fed. R. Civ. P. 15(a); *Grace v. Rosenstock*, 228 F.3d 40, 56 (2d Cir. 2000).

Notwithstanding the foregoing principle, leave to amend may be denied where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue

of allowance of the amendment, futility of the amendment, etc." *Williams v. Citigroup Inc.*, __ F.3d __, No. 10-533, 2011 WL 3506099, at *4-5 (2d Cir. 2011) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)); *SCS Commc'n, Inc. v. Herrick Co., Inc.*, 360 F.3d 329, 345 (2d Cir. 2004) (under Rule 15(a), "leave to amend a pleading may *only* be given when factors such as undue delay or undue prejudice to the opposing party are absent") (emphasis in original). The party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial." *Fariello v. Campbell*, 860 F. Supp. 54, 70 (E.D.N.Y. 1994); *see also European Cmty. v. RJR Nabisco, Inc.*, 150 F. Supp. 2d 456, 502-03 (E.D.N.Y. 2001); *Saxholm AS v. Dynal, Inc.*, 938 F. Supp. 120, 123 (E.D.N.Y. 1996). The opposing party likewise bears the burden of establishing that an amendment would be futile. *See Blaskiewicz v. County of Suffolk*, 29 F. Supp. 2d 134, 137-8 (E.D.N.Y. 1998) (citing *Harrison v. NBD Inc.*, 990 F. Supp. 179, 185 (E.D.N.Y. 1998)).

**IV. DISCUSSION**

Although Plaintiff seeks leave to amend his Complaint to add an ADEA cause of action, his position is that the original Complaint sufficiently pleads an ADEA claim despite not specifically referencing it. Nevertheless, Plaintiff contends that leave to amend should be granted because: 1) there has been no undue delay in seeking amendment; 2) there has been no repeated failure to cure deficiencies in previously allowed amendments; 3) Defendant will not be prejudiced by the amendment; and 4) the amendment is not futile. DE 24-2. Defendant contends that Plaintiff's motion to amend should be denied because the request is untimely and the proposed amendment is prejudicial, wasteful of judicial resources, and futile. DE 25. These arguments are addressed below.

A.     **Undue Delay and Prejudice to Defendant**

The amendment was proposed approximately eighteen months after the Complaint was initially filed. Defendant contends that an inordinate delay can be a sufficient basis for denying leave to amend if there is no satisfactory explanation for the delay. DE 25 at 8 (citing *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990)). The Second Circuit, however, has held that mere delay "absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) (quotations and citation omitted). Indeed, in *Creswell*, the Second Circuit held that a district court has discretion to deny leave to amend where there is "an inordinate delay, no satisfactory explanation is offered for the delay, *and the amendment would prejudice the defendant.*" 922 F.2d at 72 (emphasis supplied). SCCC has not demonstrated that the amendment would unduly prejudice it. Thus, regardless of whether the explanation by Plaintiff's counsel for the late amendment (i.e., his belief that the ADEA claim until recently had been pleaded adequately) is "satisfactory," mere delay is not a sufficient reason for denying leave to amend.[3]

In determining what constitutes prejudice, the Second Circuit considers whether the assertion of the new claim would: "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Block*, 988 F.2d at 350. Defendant states that it will be required to expend additional resources and

---

[3]     Defendant does not argue that the amendment is sought in bad faith and the record here does not reflect any bad faith.

conduct additional discovery if the ADEA claim is added. DE 25 at 24. Defendant does not specify what additional discovery it would need or resources it would be required to expend.

Plaintiff's position is that Defendant has been on notice of the ADEA claim since the original complaint was filed because the pleading included claims of age discrimination and because the DHR complaint "was cross filed within the EEOC under the ADEA." DE 24-2 at 3. Furthermore, the discovery needed for the ADEA claim would also be necessary for the retaliation claim since the issue of whether Plaintiff had a good faith belief that he was being subjected to age discrimination is an element of his retaliation claim.

The Court finds that the addition of an ADEA claim would not cause Defendant to expend additional significant resources or otherwise unduly prejudice the Defendant. It is true that the elements of a retaliation claim are not identical to the elements of a discrimination claim. *See Porter v. Texaco Inc.*, 985 F. Supp. 380, 384 (S.D.N.Y. 1997) ("[C]laims of retaliation for filing a complaint of, or otherwise opposing, sex discrimination do not require a meritorious sex discrimination claim, but only a good faith belief in the existence of such a claim . . . ."). The claims are, however, factually interrelated such that much of the discovery necessary for the ADEA claim has been or will be produced in connection with the retaliation claim.[4]

The fact that the non-moving party has knowledge of the facts giving rise to the proposed

---

[4] The Court notes that in evaluating attorney fee awards, many courts have ruled that discrimination and retaliation claims are factually interrelated and involve a common set of facts. *See, e.g., Dominic v. Consolidated Edison Co. of New York, Inc.*, 822 F.2d 1249, 1259 (2d Cir. 1987) (upholding district court finding that the legal theories underlying discrimination and retaliation claims were "inextricably intertwined"); *see Dailey v. Societe Generale*, 915 F. Supp. 1315, 1331-32 (S.D.N.Y. 1996) (collecting cases) *aff'd in part, vacated in part* 108 F.3d 451 (2d Cir. 1997).

claim also weighs in favor of permitting amendment. *Monahan v. New York City Dep't of Corrections*, 214 F.3d 275 (2d Cir. 2000); *see Block*, 988 F.2d at 350-51. For example, in *Purdy v. Town of Greenburgh*, the court found that the ADEA claim plaintiff sought to add would not prejudice defendants since the ADEA claim was based on the same facts as the § 1983 age discrimination claim asserted in the original complaint. 166 F. Supp. 2d 850, 859 (S.D.N.Y. 2001). Similarly, Plaintiff here does not seek to introduce new facts. He merely wants to add a new statutory basis for his age discrimination claim. Defendant was aware of the underlying facts due to Plaintiff's assertion of age discrimination claims in the DHR complaint and because Plaintiff asserted them here in connection with his now dismissed § 1983 claim. Significantly, the Court also draws attention to Exhibits 1 through 3 annexed to the Declaration of Thomas Ricotta, Esq. [DE 24]. Part 4 of Exhibit 1 is the EEOC "Notice of Charge of Discrimination" dated September 28, 2005. Under the list of possible charges, the EEOC representative checked off "The Age Discrimination in Employment Act of 1967 (ADEA)." In addition, Exhibit 3 is the DHR Verified Complaint which states the following on page 1, paragraph 4: "I also charge the above-named respondent with violating . . . the Age Discrimination in Employment Act (ADEA) as amended. . . ." Moreover, page 8 of Exhibit 2 which is the standard New York State Division of Human Rights Complaint Form states the following at Section 6: "By filing this complaint, you are also filing your complaint with the Equal Employment Opportunity Commission under the . . . Age Discrimination in Employment Act, as amended . . . . This will protect your rights under Federal law." Clearly, the record reflects that the Defendant was on notice of an ADEA claim early on in the administrative proceedings and so the claim comes as no surprise in this federal litigation.

7

Finally, the procedural posture of the case weighs in favor of permitting amendment. At the time the motion was filed, discovery was in its early stages. The amendment therefore would not likely delay the resolution of the case. *Cf. Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir. 1985) (holding that amendment would have been especially prejudicial where discovery was complete and party had already filed a motion for summary judgment). In sum, Defendant has not demonstrated sufficient prejudice to warrant denying leave to amend.

### B.     Repeated Failure to Cure Deficiencies

Plaintiff correctly notes that this is his first request to amend the complaint and that he has not repeatedly failed to cure pleading deficiencies. Defendant does not dispute this. This factor weighs in favor of granting leave to amend. *See Foman*, 371 U.S. at 182.

### C.     Waste of Judicial Resources

Defendant argues that the proposed amendment would be a "wasteful drain of judicial resources." DE 25 at 18. Although courts do consider judicial economy in deciding whether to grant leave to amend, *see Sullivan v. County of Suffolk*, No. CV 04-3651, 2006 WL 2844205, at *7 (E.D.N.Y. June 1, 2006), this Court is not persuaded that the purported strain on judicial resources justifies a denial of leave to amend here. As noted in the discussion regarding prejudice, the proposed ADEA claim and the retaliation claim share a common set of facts favoring the hearing both claims together in one action.

### D.     Futility

A proposed amendment is futile when it fails to state a claim upon which relief can be granted. *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002); *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990). A determination of

futility is governed by the same standards as a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 604 (2d Cir. 2005). Under Rule 12(b)(6), the court must accept as true the factual allegations set forth in the complaint and draw all reasonable inferences in favor of plaintiff. *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). Moreover, the review is limited to facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference. *See Nechis*, 421 F.3d at 100. A complaint should not be dismissed unless it does not set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007) (to withstand a motion to amend, a complaint must "raise a right to relief above the speculative level"). "A complaint is inadequately pled 'if it tenders naked assertions' devoid of 'further factual enhancement.'" *Brookfield Asset Mgmt., Inc. v. AIG Fin. Prods. Corp.*, No. 09 Civ. 8285, 2010 WL 3910590, at *4 (S.D.N.Y. September 29, 2010) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)).

### *1.     Pleading Standard in Discrimination Cases*

Defendant argues that Plaintiff's ADEA claim is futile because he is unable to establish a *prima facie* case for age discrimination under the ADEA. To assert a *prima facie* case under the ADEA, a plaintiff must show:

> (1) that she was within the protected age group, (2) that she was qualified for the position, (3) that she experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination.

*Gorzynski v. Jetblue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010). Defendant argues that the proposed Amended Complaint does not "establish that Plaintiff was subject to an adverse

9

employment action or was terminated under circumstances giving rise to an inference of age discrimination." DE 25 at 24. Defendant also seems to suggest, citing Second Circuit cases from the 1970s and 1980s, that complaints relying on civil rights statutes are subject to a heightened pleading standard. *See id.* at 10-11.

Defendant misstates the standard applicable to this motion. The Supreme Court has rejected the application of a heightened pleading standard for discrimination cases and has also held that the *prima facie* case is an evidentiary standard, not a pleading requirement. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002); *see also Napoletano v. Damianos Realty Group*, No. CV-06-3806, 2007 WL 1160411, at *3 (E.D.N.Y. April 18, 2007). Thus, the sufficiency of an employment discrimination case rests on whether it satisfies the pleading requirements of Federal Rule of Civil Procedure 8, not on whether it alleges the facts necessary to <u>establish</u> a *prima facie* case of discrimination. Although Plaintiff need not make out a *prima facie* case in his complaint "the elements thereof provide an outline of what is necessary to render [his] claims for relief plausible" and courts consider these elements in determining whether there is sufficient factual matter in the complaint which, if true, gives Defendant a fair notice of Plaintiff's claim and the grounds on which it rests. *Sommersett v. City of New York*, No. 09 Civ. 5916, 2011 WL 256301, at *5 (S.D.N.Y. June 28, 2011). Since the sufficiency of the first two elements is undisputed, the Court only addresses the second two – whether Plaintiff experienced adverse employment action and whether such action occurred under circumstances giving rise to an inference of discrimination.

### 2.     *Adverse Employment Action*

A key element of an ADEA claim is that the plaintiff must have suffered an adverse employment action.  For purposes of the ADEA, an adverse employment action is "more disruptive than a mere inconvenience or an alteration of job responsibilities and can include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 499 (2d Cir. 2009) (internal quotations and citations omitted).

The proposed Amended Complaint alleges that Plaintiff was denied a promotion, vacation time, personal leave time, overtime opportunities, uniforms, supplies, safety equipment, and training.  ¶¶ 10-12, 14, 17-18.  The pleading further asserts that Plaintiff was forced to select his vacation time for an entire year in December of the prior year and that Plaintiff received a reprimand for calling in sick during a mandatory overtime shift.  ¶¶ 13, 27.  Plaintiff alleges that younger, similarly situated employees were not subject to this treatment.  *Id.*  As a result of this "continued discrimination," Plaintiff allegedly retired from employment "out of fear that he would lose his job."  ¶ 28.

Although the statue of limitations was not raised by Defendant, the Court notes that Plaintiff's failure to promote claim is time-barred and will not be considered in determining whether Plaintiff suffered adverse employment action.  Plaintiff's failure to promote claim is based on his denial of a promotion to a Campus Security Guard (II) position in 2002.  *See* ¶¶ 10, 12.[5]  "A plaintiff seeking recovery under the ADEA must file a discrimination charge with a

---

[5]     The proposed Amended Complaint refers to a "denial of promotional opportunit*ies*, as set forth above."  ¶ 12 (emphasis supplied).  The preceding paragraphs, however, only mention one

state agency within 300 days of the occurrence of the allegedly unlawful employment practice." *Kassner v. 2nd Ave. Delicatessen Inc.,* 496 F.3d 229, 237 (2d Cir. 2007). Here, Plaintiff filed his first complaint with the DHR on September 28, 2005, over 300 days after the alleged failure to promote occurred and after the statute of limitations on that claim had run.[6]

The issue for the Court then, is whether Plaintiff's remaining allegations – the denial of vacation time, personal leave time, overtime opportunities, uniforms, supplies, safety equipment, and training, and the 2008 reprimand[7] – are sufficient to constitute an adverse employment

---

promotional opportunity – the 2002 application to the Campus Security Guard (II) position, thus the Court assumes this is the only promotion Plaintiff asserts he was denied.

[6] In his brief in opposition to Defendant's motion to dismiss, Plaintiff argues that the continuing violation theory, an exception to the ADEA statute of limitations, applied to his ADEA claim (although that claim was not asserted at that point). DE 13 at 12-14. "[T]he continuing violation theory may be used where there have been specific and related instances of discrimination, and the employer has permitted them to continue unremedied for so long that its inaction may reasonably be viewed as tantamount to a policy or practice of tolerating such discrimination." *Fitzgerald v. Henderson*, 251 F.3d 345, 362 (2d Cir. 2001). Not all discriminatory acts are subject to the continuing violation doctrine and courts in this Circuit generally look unfavorably on the exception. *See Scroxton v. Town of Southold*, No. 08-CV-4491, 2010 WL 1223010, at *4 (E.D.N.Y. March 24, 2010). "The exception usually applies only in those cases involving specific discriminatory policies or mechanisms, such as discriminatory seniority lists or employment tests." *Id.* (citations omitted). In contrast, "'[a] discrete retaliatory or discriminatory act occurred on the day that it happened' and 'is not of a continuing nature.'" *Kassner*, 496 F.3d at 239 (quoting *National R.R. Passenger v. Morgan*, 536 U.S. 101, 114 (2002)); *see Affrunti v. Long Island Univ.*, No. 04-2710-CV, 136 Fed. Appx. 402, 404, 2005 WL 1469332, at *2 (2d Cir. June 22, 2005). Defendant's alleged failure to promote Plaintiff in 2002 was a discrete discriminatory act that is not subject to the continuing violation doctrine. *See Gorokhovsky v. City of New York*, No. 10 Civ. 8848, 2011 WL 2019423, at *5 (S.D.N.Y. May 19, 2011) ("It is well settled that failures to promote, discriminatory pay, job transfers, and unfavorable assignments are discrete acts that cannot form the basis of a continuing violation claim.") (citing *Morgan*, 536 U.S. at 114).

[7] Although some of the allegations of denials of personal and vacation time involve acts that fall outside the statute of limitations period, unlike the failure to promote, these acts are not time barred since they may be considered in conjunction with Plaintiff's hostile work environment claim. "A charge alleging a hostile work environment claim . . . will not be time barred so long as all the acts which constitute the claim are part of the same unlawful

action. It is unlikely that any of these acts *standing alone* is sufficiently disruptive so as to constitute an adverse employment action. *See Leibowitz*, 584 F.3d at 499; *Bennett v. Watson Wyatt & Co.*, 136 F. Supp. 2d 236, 248 (S.D.N.Y. 2001) ("Courts in this circuit have found that reprimands, threats of disciplinary action and excessive scrutiny do not constitute adverse employment actions."). Plaintiff, however, has asserted a theory of constructive discharge, which is considered an adverse employment action. *See Spence v. Maryland Cas. Co.*, 995 F.2d 1147, 1156 (2d Cir. 1993). Because, as set forth below, Plaintiff has sufficiently alleged constructive discharge, the Court need not examine whether any of Defendant's actions standing alone would constitute adverse employment action.[8]

"Constructive discharge of an employee occurs when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily. Working conditions are intolerable if they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 89 (2d Cir. 1996) (internal quotations and citations omitted). Viewing the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has adequately alleged constructive discharge. Proving the claim may be another matter. In reaching this decision, the Court recognizes that in order to succeed on a theory of constructive discharge it "is not sufficient that an employee feel that the quality of his work is being unfairly criticized or that the employee's working conditions were unpleasant or

---

employment practice and at least one act falls within the time period." *Morgan*, 536 U.S. at 122.

[8] Judge Wexler recently denied Defendants' motion to dismiss the constructive discharge claim on the grounds that Plaintiff failed to exhaust administrative remedies. DE 29. The parties did not brief, and Judge Wexler did not rule on, whether the Plaintiff had sufficiently pled constructive discharge.

difficult." *Stetson v. NYNEX Service Co.*, 995 F.2d 335, 360 (2d Cir.1993). At this point in the proceedings, however, it cannot be said that there is no set of circumstances under which Plaintiff would be entitled to relief, especially in light of the allegations concerning the denial of personal leave time and the denial of safety equipment. *See Coffey v. Cushman & Wakefield, Inc.*, No. 01 Civ 9447, 2002 WL 1610913, at *5 (S.D.N.Y. July 22, 2002).

### 3. *Inference of Discrimination*

Initially, the Court notes that the proposed Amended Complaint conflates Plaintiff's disparate treatment claim, hostile work environment claim, and retaliation claim in a single count. These are all distinct claims and should be alleged as separate counts. *See* Fed. R. Civ. P. 10(b); *Russo-Lubrano v. Brooklyn Fed. Savings Bank*, No. CV-06-0672, 2007 WL 121431, at *5 (E.D.N.Y. Jan. 12, 2007). In the interest of judicial economy, the Court will nevertheless review the sufficiency of the allegations. The Amended Complaint which the Court is permitting Plaintiff to file must, however, comply with Rule 10(b) of the Federal Rules of Civil Procedure.

Plaintiff's allegations raise an inference of discrimination and give Defendant a fair notice of the grounds on which Plaintiff's claim rests. The proposed Amended Complaint alleges various specific opportunities and benefits that Plaintiff was denied (*see* discussion above), but that younger, similarly situated employees received. Accepting these allegations as true, which the Court must do at this stage of the litigation, the Court concludes that Plaintiff has alleged facts from which an inference of discrimination can be drawn. *Cf. Jackson v. NYS Dep't of Labor*, 709 F. Supp. 2d 218, 227 (S.D.N.Y. 2010) (dismissing race and religion discrimination claims where the plaintiff failed to state her race or religion or provide any specific details about

14

her treatment). At this point in the proceedings, these facts are sufficient. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002).

### 4. Effect of DHR Proceedings

Defendant also argues that the ADEA claims are futile because "they will be dismissed by the Court based on the same reasons set forth in the [DHR] determination." DE 25 at 11. Selectively quoting from *Astoria Federal Savings and Loan Ass'n v. Solimino*, Defendant states that "federal courts may properly 'extend some level of deference to the determinations of state authorities' . . . ." *Id.* (citing 501 U.S. 104, 112-14 (1991)); *see also* DE 16-17. In the quoted portion of *Astoria Federal*, the Supreme Court was referring to deference that the EEOC gives to state administrative findings, not the level of deference federal courts should give state administrative findings. 501 U.S. 104 at 112 (". . . the EEOC of its own accord came to extend some level of deference to the determinations of state authorities."). As *Astoria Federal* makes plain, and Defendant concedes,[9] unreviewed state administrative findings have no preclusive effect on federal court proceedings. *Id.* at 110-11.

Defendant correctly states that the "state administrative findings may be entered into evidence at trial." *See* DE 25 at 11; *Astoria Federal*, 501 U.S. at 113-14. At this stage of the proceedings, however, it would be improper for this Court to weigh any evidence. Although Defendant may believe Plaintiff's claim will ultimately fail based on the evidence adduced at the DHR proceeding or other evidence, the time to raise this issue is at summary judgment. *See*

---

9   Although Defendant ultimately conceded this point, it spent several pages setting forth arguments concerning the *res judicata* effect of state administrative findings in federal court that Defendant previously made to Judge Wexler in connection with Defendant's motion to dismiss. *See* DE 25 at 11-16. I do not address these arguments since Judge Wexler has already ruled upon them.

*Valenti v. Massapequa Union Free School Dist.*, No. 09-CV-977, 2010 WL 475203, at *6 (E.D.N.Y. Feb. 5, 2010) (". . . Rule 8(a) relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims.") (citing *Swierkiewicz*, 534 U.S. at 512).

### V.     CONCLUSION

Defendant has not successfully established that Plaintiff's proposed amendment would be futile or any other grounds warranting a denial of leave to amend. Plaintiff's motion to amend is therefore GRANTED. Plaintiff is directed to serve his Amended Complaint, in compliance with the information contained in this Order (including compliance with Fed. R. Civ. P. 10(b)), within five (5) days of the entry of this Order.

**SO ORDERED:**

Dated: Central Islip, New York
       November 29, 2011

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge